**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**T.O., Minor Child, Appellant,**

**and Concerning J.D.R., Respondent.**

**No. 84SA43.**

Supreme Court of Colorado,
En Banc.

March 11, 1985.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Foreman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Diana M. Richett, Deputy State Public Defender, Denver, for minor-child appellant.

ROVIRA, Justice.

In this case of first impression, T.O., a minor child, contends that the juvenile court imposed an illegal sentence under the mandatory sentencing provisions of the Children's Code. We agree, and therefore vacate the judgment and remand for resentencing in accordance with this opinion.

## I.

On August 25, 1982, the juvenile court, after finding T.O. a delinquent child for the third time, sentenced him to one year in the Denver County Jail, concluding that section 19–3–113.1(2)(b), 8 C.R.S. (1984 Supp.) of the Children's Code mandated such a result. T.O. was sentenced under this section because he was adjudicated a delinquent child for acts committed prior to his eighteenth birthday, but was older than eighteen on the date of the dispositional hearing. The court further held that T.O. could not earn statutory good time while serving his sentence, *see* §§ 17–26–109, 17–26–115, 8 C.R.S. (1978), and that early release could only be obtained upon a showing of exemplary behavior under subsection 19–3–113.1(2)(b)(II). T.O. was then remanded to the custody of the sheriff to begin serving his one-year sentence.

On October 29, 1982, T.O. petitioned this court to issue a writ pursuant to C.A.R. 21 requiring the juvenile court to show cause why "an Order should not be issued requiring the Respondent Court to withdraw its Order ... denying the Minor Child credit for good time." The petition was denied, *en banc*, on November 4, 1982.

Later, T.O. filed a motion for early release, or, in the alternative, a motion for reduction of sentence, with the juvenile court. After a hearing, the motion for reduction was denied and the motion for early release deemed to be premature. However, the juvenile court indicated that it would entertain the option of early release upon a showing of exemplary behavior at a future date that would approximate good time release. As to any future showing of exemplary behavior, the court stated that it would not "need to hear from all of the sheriffs but ... [it] would certainly want to hear from one person who is in a position to have both personal knowledge of the minor's behavior and to be in a position to collect some otherwise hearsay testimony from other employees of the county jail to report to the Court." It then authorized T.O. to participate in work release if the jail officials approved, and noted that if he "were to act inappropriately while on work release or not follow through, that, of course, would destroy any opportunity that he might have for early release for exemplary behavior." The court also stated that it would entertain any future request for T.O.'s referral to the community corrections program. Finally, a hearing for April 1, 1983, was scheduled.

After the April hearing, the juvenile court found no showing of exemplary behavior, but it did not foreclose any future showing if T.O. wished to present any additional evidence. Authorization for T.O.'s possible participation in work release or referral to community corrections was continued.

On April 11, 1983, T.O. filed a motion for postconviction relief pursuant to Crim.P. 35(a) for correction of his sentence. T.O. claimed that the juvenile court had imposed an illegal sentence by misinterpreting the legislative mandate of section 19–3–113.-1(2)(b), which the court found required T.O.

to be sentenced to county jail for a minimum of one year without provision for statutory good time. The motion also alleged that the court violated T.O.'s right to equal protection guaranteed by the fifth and fourteenth amendments to the United States Constitution by erroneously denying him eligibility for statutory good time which is available to other persons similarly situated; namely, other persons confined to the county jail. T.O. requested that his sentence to the county jail for a minimum of one year be reduced or, in the alternative, that the juvenile court vacate its previous order denying him statutory good time.

After a hearing, the motion for postconviction relief was denied. However, the juvenile court also heard new testimony concerning exemplary behavior. A Denver police officer assigned to the county jail stated that he had supervised the minor on a number of occasions and found him to be cooperative and helpful. The juvenile court decided to take the issue of exemplary behavior under advisement in order to consider it together with exemplary behavior testimony from the previous hearing. A minute order entered on May 5, 1983, reflects that T.O. was unable to establish exemplary behavior for the third time.

Shortly thereafter, the juvenile court issued a written order reaffirming its earlier denial of the Crim.P. 35(a) motion. In addition, it denied the Crim.P. 35(a) motion as being untimely filed, finding that C.R.J.P. 1 and section 19–3–116, 8 C.R.S. (1978), required all motions for new hearings as to dispositional orders in juvenile delinquency proceedings be filed in accordance with C.R.C.P. 59. The written order also addressed the legality of the sentence by way of explanation and guidance because of the significance of the issues involved.

On appeal, T.O. contends that the motion to review the legality of his sentence was properly filed pursuant to Crim.P. 35(a), that the juvenile court imposed an illegal sentence by its misinterpretation of section 19–3–113.1(2)(b), and that such misinterpretation violated his constitutional right to equal protection by denying him eligibility

for statutory good time. The appeal was originally filed in the court of appeals but, due to the constitutional challenge of a statute, was referred to this court pursuant to section 13–4–110(1)(a), 6 C.R.S. (1973). We accepted jurisdiction.

## II.

We first address the juvenile court's denial of T.O.'s motion for postconviction relief on the basis that Crim.P. 35(a) does not apply to his request for a new hearing as to dispositional orders in delinquency proceedings, but that the proper motion is made under C.R.C.P. 59 (motion for a new trial). In reaching this conclusion, the lower court read C.R.J.P. 1 together with section 19–3–116, 8 C.R.S. (1978) of the Children's Code. C.R.J.P. 1 provides in pertinent part that "[p]roceedings in delinquency shall be conducted in accordance with the Colorado Rules of Criminal Procedure except as otherwise provided by statute or by these rules." Section 19–3–116(1) provides that:

A parent, guardian, custodian, or next friend of any child adjudicated under this article, or any person affected by a decree in a proceeding under this article, may petition the court for a new hearing on the grounds specified in rule 59 of the Colorado rules of civil procedure.

The juvenile court reasoned that section 19–3–116(1) preempted the applicability of Crim.P. 35(a) because T.O. was a "person affected by a decree" within section 19–3–116(1) and he should have filed a C.R.C.P. 59 motion for a new hearing within 15 days after the entry of the judgment. His failure to do so formed the basis of the juvenile court's denial of his Crim.P. 35(a) motion.

■ T.O.'s failure to move for a new hearing does not preclude the court from considering whether an illegal sentence has been imposed pursuant to Crim.P. 35(a). T.O.'s failure to appeal his adjudication as a mandatory sentence offender or to challenge his sentence earlier is not a proper basis for denying his Crim.P. 35 claim. Crim.P. 35(c)(2) plainly states that

[n]otwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed on appeal, every person convicted of a crime is entitled as a matter of right to make application for postconviction review upon the grounds hereinafter set forth.

Among the "grounds hereinafter set forth" are good faith claims that the sentence imposed is in violation of the constitution or laws of the United States or the constitution or laws of this state, Crim.P. 35(c)(2)(I), or that it is not in accordance with the sentence authorized by law. Crim.P. 35(c)(2)(IV). Here, T.O. claimed that the juvenile court had misinterpreted section 19–3–113.1(2)(b) in sentencing him to the county jail for a minimum of one year without provision for good. time. "[A]s long as a postconviction motion states a claim cognizable under Crim.P. 35 and the claim has not been fully and finally resolved in a prior judicial proceeding, the defendant is entitled to judicial review of the asserted error." *People v. Muniz,* 667 P.2d 1377, 1380 (Colo.1983). *See also People v. Billips,* 652 P.2d 1060 (Colo.1982); *People v. Bradley,* 169 Colo. 262, 455 P.2d 199 (1969). Therefore, the juvenile court erred in denying the Crim.P. 35 claim on the basis that it was improper and untimely, even though it had addressed the substantive basis underlying the claim.

### III.

We next examine whether the juvenile court imposed an illegal sentence by interpreting section 19–3–113.1(2)(b) as requiring a minimum one-year jail sentence without provision for good time. At the time of sentencing, that section provided:

> The court shall place or commit a mandatory sentence offender out of the home for not less than one year; except that:
> (I) If the person is eighteen years of age or older on the date of a dispositional hearing, the court may sentence that person to the county jail for a period not to exceed one year, if he has been adjudicated a mandatory sentence offender pursu-

ant to section 19–1–103(19.5) for acts committed prior to his eighteenth birthday; or
(II) The child or person may be released by the committing judge upon a showing of exemplary behavior.

§ 19–3–113.1(2)(b), 8 C.R.S. (1984 Supp.).

Before this section was amended in 1982, it provided that certain delinquent children, who are now defined as "mandatory sentence offenders" under section 19–1–103 (19.5), 8 C.R.S. (1984 Supp.), had to be placed or committed out of the home for a mimimum of one year with the exception of early release upon a showing of exemplary behavior. *See* Ch. 233, sec. 4, § 19–3–113.-1(2)(b), 1981 Colo.Sess.Laws 1036, 1037. If the sentencing court desired to impose the more punitive dispositional alternative of jail, it could only do so for a maximum of 180 days. § 19–3–113(1)(d), 8 C.R.S. (1978). Children sentenced to jail were also entitled to early release for earned good time. §§ 17–26–109, 17–26–115, 8 C.R.S. (1978).

After the 1982 amendments, the county jail dispositional alternative was expressly brought within section 19–3–113.1(2)(b) and the maximum jail sentence was extended from 180 days to one year. Ch. 84, sec. 1, § 19–3–113.1(2)(b), 1982 Colo.Sess.Laws 332. Here, the juvenile court found that the amendments went one step further. It reasoned that the opening clause of section 19–3–113.1(2)(b) which states that the sentencing court "shall place or commit a mandatory sentence offender out of the home for not less than one year" extended to those sentenced to county jail under subsection 19–3–113.1(2)(b)(I) [hereinafter referred to as subsection I], and therefore, jail sentences also had to be imposed for a minimum of one year. It also found that if jail sentences under subsection I were deemed to be a subcategory of placements or commitments referred to in the opening clause for the purpose of minimum sentences, then subsection 19–3–113.1(2)(b)(II) [hereinafter referred to as subsection II], which provided for early release from placements and commitments upon a showing of exemplary behavior, also extended to

jail sentences. Therefore, the juvenile court concluded that mandatory sentence offenders who are sentenced to jail under subsection I are not eligible for good time but are only entitled to an early release upon a showing of exemplary behavior under subsection II. It further stated that such offenders "must look to the judge, not to the sheriff, for early release from jail."

### A.

■ Contrary to the juvenile court's interpretation, the imposition of jail sentences under subsection I is not an extension of mandatory one-year placements or commitments under the opening clause, but a separate and distinct alternative. Placements and commitments have distinct meanings under the Children's Code; a sentence to county jail is neither a "placement out of the home," § 19–1–103(21.5), 8 C.R.S. (1984 Supp.), nor a "commitment." See § 19–1–103(7), 8 C.R.S. (1978); § 19–3–113(3), 8 C.R.S. (1984 Supp.). Therefore, the mandatory minimum one year for the dispositional alternatives of placement and commitment does not extend to jail sentences imposed under subsection I.

■ Moreover, the express language of subsection I indicates that the legislature did not intend mandatory minimum one-year jail sentences, but gave the sentencing court discretion in sentencing for any period of time up to a maximum of one year. Subsection I provides that the sentencing courts may sentence certain mandatory sentence offenders to the county jail "for a period not to exceed one year." Therefore, we conclude that the lower court erred in holding that section 19–3–113.1(2)(b) mandates a minimum one-year sentence where the dispositional alternative of county jail is considered most appropriate.

### B.

■ We next consider whether T.O. was improperly denied his statutory right to good time. As stated earlier, because the lower court found that jail sentences under subsection I were included within placements and commitments, and that children placed or committed could obtain early release only upon a showing of exemplary behavior under subsection II, it concluded that those children sentenced to county jail were only entitled to an early release upon a showing of exemplary behavior. It found further support for this conclusion by reading the 1982 amendment of the words "or person" in subsection II as referring to "persons" given jail sentences under subsection I. In so holding, the court essentially held that the enactment of subsection II had preempted a mandatory sentence offender's right to good time under sections 17–26–109 and 17–26–115, 8 C.R.S. (1978). We disagree.

It must be assumed that in 1982 the General Assembly acted with full knowledge of the good time provisions and did not intend to make any change beyond what it expressly declared. *See, e.g., Smith v. Miller,* 153 Colo. 35, 384 P.2d 738 (1963); *Board of County Commissioners v. Lunney,* 46 Colo. 403, 104 P. 945 (1909). At the time section 19–3–113.1(2)(b) was amended, the good time provisions provided in pertinent part:

> *Every* person who is sentenced to and imprisoned in any county jail of this state or to pay a fine and costs or either or all thereof and who performs faithfully the duties assigned to him during his imprisonment therein *is entitled* to a deduction from the time of his sentence of two days in each month.

§ 17–26–109, 8 C.R.S. (1978) (emphasis supplied). *See also* § 17–26–115, 8 C.R.S. (1978) (persons designated "trusty prisoners" may earn additional good time). In 1979, we examined this language in the case of *Hemphill v. District Court,* 197 Colo. 431, 593 P.2d 972 (1979). There, the sentencing court had sentenced the petitioner to the Denver County Jail for a "flat" six months, without provision for good time. After the petitioner had accumulated enough time to permit his immediate release were it not for the "flat" sentence, he sought a writ directing the respondent court to allow the warden of the jail to exercise his discretion in deducting

good time from his sentence. We issued a rule to show cause and later made the rule absolute. In so doing, we held that it was "not within the power of the sentencing court to impose a sentence which denies to one imprisoned in the county jail the benefits of [the good time] statute." 197 Colo. at 432, 593 P.2d at 973. It is against this background of the availability of good time for all county prisoners that the General Assembly amended the mandatory sentence offender provisions of the Children's Code.

■■■ We find that the juvenile court misinterpreted the import of the 1982 amendments. As discussed previously, the placements and commitments which are referred to in the opening clause of section 19–3–113.1(2)(b) do not include jail sentences under the Children's Code. Therefore, contrary to the juvenile court's interpretation, early release from placements or commitments upon a showing of exemplary behavior under subsection II does not extend to jail sentences imposed under subsection I. Although the juvenile court could have interpreted the words "or person" in subsection II as referring to persons given jail sentences under subsection I, such a possibility did not mandate that early release from jail sentences be limited to a showing of exemplary behavior. The good time provisions of the Criminal Code directly conflict with such an interpretation. Where a statute, such as the exemplary behavior provision of subsection II, potentially conflicts with other statutes, like the good time provisions, it should be interpreted, if possible, to harmonize and give meaning to other potentially conflicting statutes. *See, e.g., In re D.L.E.,* 645 P.2d 271 (Colo.1982). Therefore, a better interpretation of the "or person" language added to subsection II in 1982 is that it refers to those mandatory sentence offenders who are eighteen or older at the time of the dispositional hearing who are placed or committed, instead of sentenced to county jail, or who turn eighteen after placement or commitment.

Our examination of the 1982 amendments leads us to one conclusion. We find no legislative intent or express declaration by the General Assembly in section 19–3–113.1(2)(b) to suspend the eligibility of mandatory sentence offenders to their statutory right to good time. This finding is further supported by the legislative history of House Bill 1007, which contained the 1982 amendments. Before the bill was considered by the General Assembly, hearings held in the House Committee on the Judiciary indicate that its members were fully aware that juveniles sentenced to county jail were eligible for good time, and, like adults, could obtain early release for good behavior. *Hearings on House Bill 1007, Before the House Committee on the Judiciary,* 53d General Assembly, 2d Sess. (Feb. 2, 1982).

We also note that limiting early release to a showing of exemplary behavior for those mandatory sentence offenders sentenced to county jail might foreclose any real opportunity for early release as a practical matter. In the punitive setting of jail, the offender has less of an opportunity to demonstrate exemplary behavior than he would in the structured treatment setting of the Department of Institutions. With the exception of work release and the community corrections program, the offender can only practice those habits which would normally earn him good time.

The proceedings in the juvenile court prior to this appeal also illustrate the difficulty of proving exemplary behavior while in jail. On three separate occasions, T.O. failed to meet the burden placed upon him. At the April 1983 exemplary behavior hearing, with the exception of T.O.'s statements to the court, the only evidence presented on exemplary behavior was the testimony of his probation officer. The probation officer was only able to testify that after a "spot check" of the county jail the morning of the hearing, he had talked to a Lieutenant Morgan who did not give him any particular positive comments about T.O. and a Captain Palmer about a work release nota-

tion on T.O.'s card, but the matter was not pursued. Explaining why nobody from the jail was present to testify to his good character, T.O. testified:

> I talked to Officer Calvin out there at county jail and asked him if he could come here to court for me and he told me he couldn't do that because he would be sticking his neck out for me and so then I asked him if he could send me a letter—can I bring a letter to court? And he told me he couldn't do that. All he could do is sign a piece of paper saying that I worked for him.

Absent any officers from the jail willing to testify voluntarily on behalf of T.O., such as Officer Vigil who testified during the later Crim.P. 35 hearing, he is put in the unenviable position of having to obtain subpoenas from the juvenile court directing police officers who guard him at the jail to testify on his behalf. Thus, T.O.'s opportunities to establish exemplary behavior were not only limited in jail, but his ability to prove exemplary behavior was limited as well.

Since we agree that the Children's Code protects T.O. from the illegal sentence imposed, we need not reach the constitutional issues raised. *See, e.g., Goedecke v. Department of Institutions*, 198 Colo. 407, 603 P.2d 123 (1979); *Times-Call Publishing Co. v. Wingfield*, 159 Colo. 172, 410 P.2d 511 (1966).

Accordingly, we vacate the judgment and remand for resentencing in accordance with this opinion.