Ex Parte Robin L. TANNER.

No. 14–95–00542–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 27, 1995.

Ozell Price, Sallee Smyth, Houston, for relator.

John Browne, Houston, for respondent.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

Robin L. Tanner, relator, challenges an order of commitment against him on the grounds that: (1) the trial court lacked jurisdiction to enforce payment of child support by contempt more than six months after the child support obligation was modified; (2) the divorce decree failed to specify a place for payment of child support; (3) a condition for payment of child support had not been satisfied; (4) the commitment order did not adequately specify the provisions of the divorce decree to be enforced; (5) the commitment order misstated a term of the divorce decree to be enforced; (6) the commitment order denied relator good behavior credit against his sentence; and (7) the divorce decree was not enforceable by contempt because a sub-

sequent modification order did not contain express survival language. We grant the petition for writ of habeas corpus.

Relator and the Real Party in Interest, Terri J. Tanner ("Terri"), were divorced in 1989.[1] Under their divorce decree, relator was ordered to pay child support of $35.00 per week beginning in March of 1989. Pursuant to a later modification order, relator was ordered to pay child support of $175.00 per month beginning in July of 1994.

Terri filed a motion for enforcement of child support in June of 1994, but non-suited that motion in November of that year. In December of 1994, she filed a second motion for enforcement of child support. This motion alleged that relator had failed to make any payments under the divorce decree or modification order, and requested that he be held in contempt, fined, and jailed.

Following an evidentiary hearing, the trial court found relator in contempt for failing to make nine of the $35.00 child support payments required by the divorce decree. On May 10, 1995, the court entered a commitment order finding relator in contempt, ordering him confined for 180 days, with a credit for 20 days already served, and ordering that he remain confined "until he has served 160 days for each count of contempt, to run concurrently (with no good time credit)."

Relator was immediately taken into custody. On May 17, 1995, he filed a petition for writ of habeas corpus with this court. We granted the writ and ordered relator released on bond pending final determination of the case.

■ An original habeas corpus proceeding is a collateral attack on a contempt judgment. *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967). The relator is entitled to discharge if the order underlying the contempt is void, *Ex parte Shaffer*, 649 S.W.2d 300, 301–302 (Tex.1983), or if the contempt order or commitment order is void. *See Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex.1979) (orig. proceeding); *Ex parte Herrera*, 820

---

1. A response brief was not filed in this matter. Therefore, we may accept as true facts contained in relator's brief. Tex.R.App.P. 74(f).

S.W.2d 54, 56 (Tex.App.—Houston [14th Dist.] 1991, orig. proceeding). An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process. *Ex parte Barnett,* 600 S.W.2d 252, 254 (Tex.1980) (orig. proceeding).

■ Relator first argues that the trial court lacked jurisdiction to enforce the Decree by contempt because it was not entered within six months after the date on which the child support obligation was modified.

TEX.FAM.CODE ANN. § 14.40(b)(2) (Vernon 1986)[2] provides, in part:

> (b) Time Limitations. The court retains jurisdiction to enter a contempt order if a motion for contempt for failure to comply with a court's child support order is filed within six months after:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (2) the date on which the child support obligation terminates pursuant to the decree or order or by operation of law.

The divorce decree here provided that child support payments would continue until, among other things, a further order by the trial court modifying child support. Relator contends that the modification order was such a "further order" which modified, and thereby terminated, his child support obligation under the divorce decree. Thus, he asserts that any motion to enforce the child support obligation arising under the divorce decree had to be filed within six months after the modification order was signed.

Although Terri filed her first motion to enforce within the six month period, that motion was non-suited. Her second motion to enforce was filed on December 15, 1994, more than six months after the modification order was entered. Therefore, based on Section 14.40(b)(2), relator argues that the trial court did not have jurisdiction to hold him in contempt pursuant to this second motion. We disagree.

The six month time period in Section 14.40(b)(2) runs from the date the child support obligation *terminates.* Under TEX.FAM. CODE ANN. § 4.02 (Vernon 1993), a parent has an ongoing obligation to support his or her child while the child is a minor. We interpret the child support obligation referred to in Section 14.40(b)(2) to be this ongoing obligation, rather than the more specific obligation to pay a particular amount, such as under the divorce decree here. *See Ex parte Malone,* 788 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding). Thus, we construe Section 14.40(b)(2) to refer to the time at which the ongoing obligation to support a child *ceases,* as contrasted from merely being modified.

Here, the modification order did not relieve relator of the obligation to pay child support, but only modified the amount to be paid. Accordingly, Section 14.40(b)(2) did not deprive the trial court of jurisdiction to enter a contempt order for violation of the divorce decree. Relator's first contention is overruled.

In his second contention, relator alleges that the divorce decree could not be enforced by contempt because it did not specify a location for payment of child support.

■ To be enforceable by contempt, a decree must spell out the details of compliance in clear, specific, and unambiguous language so that the person to whom it applies will readily know exactly what duties or obligations have been imposed. *Ex parte Slavin,* 412 S.W.2d 43, 44 (Tex.1967).

■ In this case, the divorce decree ordered that "ROBIN LEE TANNER pay to TERRI J. TANNER periodic child support" of $35.00 per week. Although providing a location or mailing address for payment might have been preferable, relator has cited no actual difficulty or confusion concerning Terri's address. Moreover, the divorce decree ordered that, at the beginning of each

---

**2.** On April 20, 1995, the Texas Legislature recodified the Texas Family Code by reenacting Title 2 and adding Title 5. Act of April 20, 1995, ch. 20, § 1, 1995 Tex.Sess.Law Serv. 113 (Vernon). This recodification was effective immediately. *Id.* at 282. Under the recodification, Section 14.40(b)(2) now appears in Chapter 157, Section 157.004. *Id.* at 177. A proceeding pending on the effective day of the Act is governed by the law in effect at the time the proceeding was commenced. *Id.* at 282. The present proceeding was commenced before April 20, 1995, and is, therefore, subject to the Family Code provisions in effect before recodification.

period of possession, the children were to be surrendered to relator at Terri's residence. Thus, relator had ample reason to not only know, but go to, Terri's residence address, a place where child support payments could reasonably be made or delivered to her. Under these circumstances, we are not persuaded that a failure to specify a location for payment of child support rendered the divorce decree so ambiguous as to be unenforceable by contempt. Therefore, we overrule relator's second contention.

Relator's third complaint is that his obligation to pay child support in the divorce decree was "subject to the provisions for withholding from earnings for child support specified below ..." i.e., in the event he became delinquent in paying child support. Relator argues that this language conditioned his child support obligation on a future event, apparently the entry of a withholding order, and, because no such order was entered, that event never occurred. We fail to see even an arguable basis for such an interpretation, and consider this position to stretch the limits of proper advocacy. Relator's third complaint is overruled.

█ In his fourth argument, relator claims that the commitment order does not adequately set forth the provisions of the divorce decree for which enforcement was sought.

TEX.FAM.CODE ANN. § 14.33(a) (Vernon Supp.1995)[3] requires, among other things, that an enforcement order imposing incarceration or fine "must contain findings setting out specifically and with particularity or incorporating by reference the provisions of the final order, decree, or judgment for which enforcement was sought ..." In *Ex parte Stanley*, 826 S.W.2d 772, 773 (Tex. App.—Dallas 1991, orig. proceeding), it was held that an enforcement order may comply with Section 14.33(a) by: (1) copying the provisions for which enforcement was sought into the order; (2) attaching a copy of the order for which enforcement was sought as an exhibit and incorporating it by reference; or (3) giving the volume and page numbers in the minutes of the court where one can find the order for which enforcement was sought.

In this case, the portion of the divorce decree for which enforcement was sought stated:

IT IS ORDERED AND DECREED that ROBIN LEE TANNER pay to TERRI J. TANNER periodic child support, subject to the provisions for withholding from earnings for child support specified below as follows:

(a) $35.00 a week, to be paid on each Monday of the week.

(b) Payments shall commence with the payment due on March 6, 1989.

The commitment order paraphrased this provision in the following manner:

ROBIN LEE TANNER stands charged with Contempt of Court in failing and refusing to comply with the terms of the judgment/order by this Court entered on or about the 10th day of October, 1989, wherein the Court ordered him to pay the sum of $35.00 each week to TERRI J. TANNER through the Harris County Child Support Department for the Support and maintenance of his/her [sic] children.

Relator contends that because the commitment order in this case did not comply with one of the three methods listed in *Stanley*, it is void. Again, we disagree. While those methods were held to be adequate to comply with Section 14.33(a), we have been cited no authority that they are the exclusive methods for doing so, or that paraphrasing the provisions to be enforced is not an adequate method.

The commitment order here, while not employing any of the *Stanley* methods, stated that relator had failed to comply with the October 10, 1989 order which required him to pay $35.00 a week to Terri. We are satisfied that it set out the provision to be enforced with sufficient specificity and particularity to fairly notify relator of his alleged acts of misconduct. Accordingly, relator's fourth contention is overruled.

3. Under the recodification, Section 14.33(a) now appears in Chapter 157, section 157.166, and the phrase, "specifically and with particularity" has been deleted. Act of April 20, 1995, ch. 20, § 1, 1995 Tex.Sess.Law Serv. 113, 182 (Vernon).

■ In his fifth allegation, relator asserts that the commitment order is void because its findings conflict with a term of the divorce decree which the commitment order sought to enforce.

As set forth above, the commitment order found relator in contempt because he failed to pay child support "through the Harris County Child Support Department." However, the divorce decree did not require relator to pay through the Harris County Child Support Department.[4] Since relator had not been required to pay through the Child Support Department, he could not lawfully be punished for failing to do so, and the finding of contempt for that violation is void. Relator's fifth contention is sustained.

■ In his sixth claim, relator argues that the portion of the commitment order disallowing good time credit against his sentence is void.

A trial court has no authority to limit the operation of good behavior credit. *Ex parte Roosth*, 881 S.W.2d 300, 301 (Tex.1994). Here, the commitment order sentenced relator to 180 days confinement, less twenty days for time already served, but specifically stated that he was to be given no credit for "good time." This denial of good behavior credit is void. *Id.* Relator's sixth contention is sustained.

■ Finally, relator contends that the lack of express "survival language" in the modification order created uncertainty and ambiguity which rendered the child support provisions of the divorce decree unenforceable. In support of his position, relator cites *Ex parte White*, 616 S.W.2d 340 (Tex.Civ.App.—

San Antonio 1981, orig. proceeding), and *Ex parte Smith*, 691 S.W.2d 101 (Tex.App.—Dallas 1985, orig. proceeding). In each of those cases, for reasons which are not apparent to us, the existence of an original and modified order was held to create uncertainty concerning the amount of child support the relator was required to pay.

In this case, relator has not demonstrated that the existence of the divorce decree and modification order, or lack of survival language therein, created any such uncertainty. The modification order simply changed the amount of child support relator was required to pay.[5] We overrule relator's seventh contention.

Based on our sustaining of relator's fifth and sixth contentions, we grant the petition for writ of habeas corpus, and order relator discharged from custody and released from bond.[6]

LEE, J., concurs in the result only.

---

4. Under the divorce decree, payment of child support through the Harris County Child Support Department was specified only where the funds were to be withheld from relator's earnings by his employer, and not where he made the payments himself.

5. Nor do we accept that the mere existence of a modification order automatically creates uncertainty as to the amount of child support an obligor is required to pay. Such an interpretation would suggest that a child support order could not be enforced by contempt once a modification was entered. To the extent *White* and *Smith* can be read to so provide, we disagree with those opinions.

6. We have no authority to simply reform the commitment order to delete the two objectionable phrases. *See Ex parte Payne*, 598 S.W.2d 312, 320 (Tex.Civ.App.—Texarkana 1980, orig. proceeding); *Ex parte Myrick*, 474 S.W.2d 767, 772 (Tex.Civ.App.—Houston [1st. Dist.] 1972, orig. proceeding). Under Tex.R.App.P. 122, the Texas Supreme Court, in ruling on a petition for writ of habeas corpus, may "make such orders ... as may be appropriate." *See Ex parte Roosth*, 881 S.W.2d 300, 301 (Tex.1994) (provision in commitment order barring good behavior credit stricken; writ of habeas corpus otherwise denied). However, no such discretion has been extended to the courts of appeals.