### In re the MARRIAGE OF Cynthia I. HELMICH, Appellee,

### and

### Miles R. Blount, Appellant.

### No. 95CA1658.

Colorado Court of Appeals, Div. II.

March 6, 1997.

Rehearing Denied April 10, 1997.

No Appearance for Appellee

Jeffrey E. Veigel, Lakewood, for Appellant.

Opinion by Judge KAPELKE.

Miles R. Blount (father) appeals the judgment finding him in contempt for failure to pay child support. We affirm, but remand for clarification of father's entitlement to good time credits.

In the permanent orders entered in 1988, father was ordered to pay child support in the amount of $206 per month to Cynthia I. Helmich (mother) for the benefit of their child. Thereafter, mother requested that father be held in contempt for failure to pay child support, alleging that he was in arrears in the approximate amount of $4,000.

Both parties appeared *pro se* at the contempt hearing and testified briefly. The trial court found that father had paid very little child support in the preceding two years, even though a "tremendous amount of money ha[d] gone through [father's] business" during part of that time. Father's refusal to pay child support, despite his ability to do so, was deemed a willful violation of the court's order, and therefore, the court found that father's conduct was offensive to the authority and dignity of the court.

The court found father guilty of contempt and entered the following sentence:

The sentence is six months in the Denver County Jail. No weekend release. No work release. No furloughs. No release of any kind.

Father was immediately jailed on the day of the hearing. He paid the arrearages five days later but was not released from jail until he obtained an appeal bond.

I.

■ Father first contends that the contempt order cannot stand because the district attorney was not notified of the proceeding. We disagree.

Section 18-1-1002, C.R.S. (1996 Cum. Supp.), effective July 1, 1994, provides that:

Before a criminal contempt proceeding is heard before the court, notice of the proceedings shall be provided to the district attorney for the district of the court where the proceedings are to be heard and the district attorney for the district of the court where the alleged act of criminal contempt occurred. The district attorney for either district shall be allowed to appear and argue for the imposition of contempt sanctions.

Father argues that, because the proceeding at issue here was one of criminal contempt, the statute requires that the district attorney be notified of the proceeding, and the failure to give such notice here deprived the court of jurisdiction to conduct the contempt hearing and impose sanctions.

■ While the General Assembly may limit the jurisdiction of a court to act, no statute will be held to limit court power unless the limitation is explicit from the language of the statute. *Nguyen v. Swedish Medical Center,* 890 P.2d 255 (Colo.App.1995).

Thus, language in a statute requiring that a particular procedure be followed does not amount to a jurisdictional requirement unless it is clear that the General Assembly chose to make it so. *See Regional Transportation District v. Lopez,* 916 P.2d 1187 (Colo.1996); *see also People v. Wortham,* 928 P.2d 771 (Colo.App.1996) (court's failure to observe time limits for submission of psychiatrists' reports under Sex Offenders Act does not deprive court of jurisdiction); *cf. People v. Naulls,* 937 P.2d 778 (Colo.App.1996) (statute providing that court shall not "any longer

have jurisdiction" if procedure not followed imposes jurisdictional requirement).

Here, § 18-1-1002 requires that notice of the proceedings be given "before a contempt proceeding is heard." This language does not evince a legislative intent to deprive the trial court of jurisdiction if this requirement is not fulfilled. Accordingly, we reject defendant's assertion that the failure to comply with this statute deprived the trial court of jurisdiction.

■ Instead, we undertake the inquiry appropriate to cases involving a non-jurisdictional failure to comply with a procedural requirement: whether the noncompliance prejudiced a party's substantial rights. *See Mitchek v. Department of Revenue,* 911 P.2d 715 (Colo.App.1996) (non-jurisdictional procedural error does not mandate reversal of driver's license revocation unless error prejudiced licensee's substantial rights); *People v. Wortham, supra* (no reversible error in failure to observe time limitations where defendant "ultimately received all benefits" afforded under statute). Upon conducting such inquiry, we perceive no prejudice to defendant.

A review of the legislative history of § 18-1-1002 reveals that the statute was enacted not to protect defendants, but rather to protect the state's interest in prosecuting offenders. The General Assembly apparently enacted this statute in response to *People v. Allen,* 868 P.2d 379 (Colo.1994), *cert. denied,* 513 U.S. 842, 115 S.Ct. 129, 130 L.Ed.2d 73 (1994), *proceedings on remand,* —— P.2d —— (Colo.App. Nos. 90CA1007 and 90CA1263, November 7, 1996). Because the legislative subcommittee felt the *Allen* decision made it "unclear" whether contempt triggered double jeopardy concerns, this amendment was to enable the district attorney to receive notice of criminal contempt proceedings and also to argue for contempt sanctions. *See* Hearings on H.B. 1126-94 before the Subcommittee of the Senate Judiciary Committee, 59th General Assembly, Second Regular Session (May 9, 1994).

■ We conclude, therefore, that the statutory purpose of § 18-1-1002 is to provide

notice to prosecutors in cases in which contempt proceedings may trigger double jeopardy concerns. The amendment was not intended as a protection for defendants in a contempt proceeding.

Significantly, father has not suggested, let alone demonstrated, that he has been prejudiced in any way by the failure to give notice to the district attorney. On the record before us, there is no indication that the district attorney would have opposed imposition of the contempt order or argued for a lesser sanction than that ordered by the trial court. Nor is there any indication in the record or contention by father that his own double jeopardy rights were in any way implicated here as a result of the lack of notice to the district attorney.

Finally, we note that father did not object to the lack of notice or request a continuance prior to or at the hearing on the contempt issue. Under these circumstances, father does not have a basis to claim prejudice or surprise. *See People v. Swain,* 43 Colo.App. 343, 607 P.2d 396 (1980).

Accordingly, any error in the failure to give notice to the district attorney did not affect the substantial rights of father and is properly viewed as harmless. *See* C.R.C.P. 61.

## II.

■ However, we do agree with father's contention that he is entitled to have good time credited to his sentence and that, therefore, his release date should be determined accordingly.

Every person who is sentenced to and imprisoned in any county jail and who performs the duties or work assigned is entitled to a deduction from the length of his sentence. Sections 17–26–109 and 17–26–115, C.R.S. (1986 Repl.Vol. 8A).

■ The good time provisions apply to all county prisoners, *see People v. T.O.,* 696 P.2d 811 (Colo.1985), and the trial court is without authority to sentence a defendant to "flat time," thereby depriving him or her of the statutory right to earn good time credit toward the reduction of the sentence. *Hemphill v. District Court,* 197 Colo. 431,

593 P.2d 972 (1979). Furthermore, the court is not free to disregard a specific legislative mandate relating to sentencing, even though another alternative might appear better suited to the circumstances of the case. *People v. Widhalm,* 642 P.2d 498 (Colo.1982).

Our conclusion comports with rulings of courts from other jurisdictions that have considered the issue. *See State v. Payne,* 612 So.2d 153 (La.App.1992) (trial court erred in ordering that defendant's sentence for direct contempt be served as "flat time," without allowing the accumulation of good time); *Ex parte Suter,* 920 S.W.2d 685 (Tex.App.1995) (for contempt sentence for failure to pay child support, trial court had no authority to set an ending date on sentence because that denies the contemnor his right to be considered for statutory good time); *see also People v. Russell,* 237 Ill.App.3d 310, 178 Ill.Dec. 164, 604 N.E.2d 420 (1992) and *Ex parte Tanner,* 904 S.W.2d 202 (Tex.App.1995).

■ Accordingly, we hold that a prisoner incarcerated in a county jail for punitive contempt is entitled to the benefits of good time credits, if earned. Here, father asserts that he was denied application of the good time statutes because the trial court told the sheriff that all contempt sentences were "flat time" and that the good time credit was unavailable. To the extent the language of the order purports to limit "good time" credit, it is beyond the power of the court to do so; therefore, on remand, the trial court should clarify the order so as not to preclude the allowance of good time credit.

The contempt order is affirmed, and the cause is remanded for further proceedings in accordance with this opinion.

STERNBERG, C.J., concurs.

CRISWELL, J., concurs in part and dissents in part.

Judge CRISWELL concurring in part and dissenting in part.

I agree with Part II of the majority's opinion in which it concludes that a punitive sentence imposed under C.R.C.P. 107 must be subject to a "good time" credit under

§§ 17–26–109 and 17–26–115, C.R.S. (1986 Repl.Vol. 8A). However, because I am convinced that the result of Part I of the majority's opinion is to thwart the will of the General Assembly, as that will is evidenced by § 18–1–1002, C.R.S. (1992 Cum.Supp.), I respectfully dissent from that part of the opinion.

As the majority notes, defendant relies upon § 18–1–1002, which provides that in any "criminal contempt proceeding," the district attorney for the district within which the alleged contempt occurred, as well as the district attorney for the district within which the contempt proceeding is to be heard, "shall" be given notice of the proceedings, and each district attorney "shall be allowed to appear and argue for the imposition of contempt sanctions."

I agree with the majority that this statute was enacted to protect the interests of the People, as represented by the district attorney, not the interests of private parties who have violated the terms of a court order and who, therefore, might be subject to criminal prosecution. However, recognition of this legislative purpose leads me to conclude that, whether it may properly be classified as a "jurisdictional" restriction, § 18–1–1002 withdraws from the trial courts of this state the authority to impose *punitive* sanctions for contemptuous conduct in the absence of notice to the described district attorneys. The courts' authority to impose remedial sanctions under C.R.C.P. 107 remains unaffected.

Section 18–1–1002 was added to the Criminal Code, effective July 1, 1994. *See* Colo. Sess. Laws 1994, ch. 287 at 1717. As the majority notes, its enactment was in obvious response to *People v. Allen,* 868 P.2d 379 (Colo.1994). That decision considered the circumstances under which the punishment meted out to a party for violation of orders entered by a court in civil proceedings may bar that party's later criminal prosecution, based on the same incident, under double jeopardy concepts.

In that case, the supreme court, relying upon *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), held that punitive sanctions levied against a person in civil proceedings will bar a later prosecution only if the finding of contempt must be based upon proof of all of the elements of the crime for which the person is later prosecuted. *See, e.g., United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (civil order restraining assault incorporated all elements of criminal assault).

It is generally true that proof of the willful violation of a court order, while sufficient to allow punitive sanctions to be imposed upon the violator under a court's contempt power, will not support a criminal prosecution. *See* § 18–1–104(1), C.R.S. (1996 Repl.Vol. 9B) (no conduct constitutes a "crime" unless described as an offense in some statute); *Benninghoven v. Dees,* 849 P.2d 906 (Colo.App. 1993) (violation of court order is not a "crime").

Hence, the term "criminal contempt" has been used to describe the act or acts that would justify the imposition of punitive sanctions by a court in civil proceedings. Indeed, the terms "criminal contempt" and "punitive contempt" are often used interchangeably. *See People v. Mulberry,* 919 P.2d 835 (Colo. App.1995); *compare In re Marriage of Zebedee,* 778 P.2d 694 (Colo.App.1988) (defining punitive contempt) *with McVay v. Johnson,* 727 P.2d 416 (Colo.App.1986) (defining criminal contempt).

However, a recent amendment to the Criminal Code, § 18–6–803.5, C.R.S. (1996 Cum.Supp.), has made the violation of a wide variety of court orders a class 2 misdemeanor. Thus, a party who "contacts, harasses, injures, intimidates, molests, threatens, or touches any person," or who "enters or remains on premises," in violation of a court order, may be the subject of criminal prosecution.

Further, because the only elements of such a crime consist of the knowing violation of the order, the proof required to convict of such a crime would appear to be the same as that required to prove that the party acted contemptuously. *See Marriage of Zebedee, supra.* Arguably, therefore, if a party violated one of the orders described in § 18–6–803.5 and punitive sanctions for contempt were imposed upon that party under C.R.C.P. 107, such adjudication would bar

the People from prosecuting that party under § 18–6–803.5.

In addition, of course, a party's violation of a criminal statute may well constitute contempt of court in other contexts. And, whether the imposition of punitive sanctions for such a violation will prevent a later prosecution may well depend upon the particular factual circumstances presented. *See United States v. Dixon, supra.*

It seems clear to me, then, that § 18–1–1002 requires the court to consider the views of those district attorneys who might possess the authority to prosecute the person cited for contempt before taking any action that might bar such prosecution. It was intended that notice to the district attorneys be a condition precedent to the imposition of any punitive sanction under a contempt citation. In this sense, the statute requires that those officials be treated as indispensable to any criminal contempt proceeding.

Traditionally, of course, the absence of an "indispensable party" under C.R.C.P. 19 has been said to rob the court of any "jurisdiction" to proceed to adjudicate the rights of the parties before it. *See Civil Service Commission v. District Court,* 185 Colo. 179, 522 P.2d 1231 (1974). Hence, the question of indispensability can be raised for the first time on appeal. *Potts v. Gordon,* 34 Colo. App. 128, 525 P.2d 500 (1974).

More importantly, in testing whether a party is "indispensable," the question is whether the *absent party's* interests will be injuriously affected by the court's adjudication. *Brody v. Bock,* 897 P.2d 769 (Colo. 1995). It is irrelevant whether that party's absence will prejudice the interests of any party who is already before the court. Hence, whether the father here has, or has not, been prejudiced by the lack of notice to the People is beside the point.

I freely concede that there are distinctions between an indispensable party under C.R.C.P. 19 and the status of district attorneys under § 18–1–1002. However, the underlying purpose of both enactments is the same. That purpose is to assure that those parties who may be bound by a court's determination be given notice of the proceedings and be allowed to be heard before such a determination is made. At least with respect to the rights of private parties, due process demands nothing less. *Hidden Lake Development Co. v. District Court,* 183 Colo. 168, 515 P.2d 632 (1973).

Under the majority opinion, however, if no notice is given to the People, as the statute demands, no party to the proceeding will be allowed to complain of the lack of notice. As a result, the People may be barred from prosecuting an individual for some criminal activity simply because of the actions of a private litigant. In my view, such a result frustrates the underlying purpose of the notice statute.

Further, there is no reason why § 18–1–1002 should not receive the same treatment from the courts as similar statutes have received.

Section 13–51–115, C.R.S. (1987 Repl.Vol. 6A) requires that the Attorney General be given notice of any proceeding in which a request is made to declare a statute, an ordinance, or a franchise unconstitutional. *See also* C.R.C.P. 57(j). To carry out this statute's mandate, the supreme court has consistently allowed any present defendant in an action to raise the issue of the lack of notice to the Attorney General. In addition, it has held that, absent such notice, no claim of facial invalidity can be resolved. *See Hide–A–Way Massage Parlor, Inc. v. Board of County Commissioners,* 198 Colo. 175, 597 P.2d 564 (1979) (trial court's determination that statute is facially unconstitutional cannot be affirmed because of absence of notice to Attorney General); *Lakewood Pawnbrokers, Inc. v. City of Lakewood,* 182 Colo. 315, 512 P.2d 1241 (1973) (because of absence of notice to Attorney General, judgment vacated and cause remanded for rehearing); *Meier v. Schooley,* 147 Colo. 244, 246, 363 P.2d 653, 654 (1961) (because neither City nor Attorney General were provided with notice of action, "determination of the [constitutional] questions argued by counsel *cannot* be had in this proceeding" (emphasis supplied)).

Here, the trial court imposed punitive sanctions upon defendant without providing notice to the appropriate district attorneys. Whether those officials have any interest in

prosecuting this defendant for some crime, I do not know. I do conclude, however, that the General Assembly has given those officials the right to be heard in this proceeding and that plaintiff and the trial court have violated that right by failing to notify them of this action.

Under these circumstances, I would vacate the trial court's order of contempt and remand the cause to it with directions to give the appropriate district attorneys notice of these proceedings. Should those officials decline to participate, the court could re-enter the present judgment without further hearing. *See Lakewood Pawnbrokers, Inc. v. City of Lakewood, supra.*